Citation Nr: 1508826 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 11-26 595 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to service connection for a low back disability.


REPRESENTATION

Appellant represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

A. Fagan, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1995 to April 1997; from November 2000 to November 2004; and from October 2006 to January 2007.

This appeal comes before the Board of Veterans' Appeals (Board) from a September 2010 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO).

This matter was previously before the Board in August 2013 and July 2014, at which times it was remanded for further development.

The Board notes that in his October 2011 substantive appeal, the Veteran requested a Board videoconference hearing, and that his requested hearing was scheduled for January 2013. However, the Veteran failed to appear. In July 2013, he requested that his Board hearing be rescheduled, but in August 2013, the Board found that the request was untimely and that good cause for his failure to appear in January 2013 had not been shown. 38 C.F.R. § 20.704 (2014). 


FINDING OF FACT

A lumbar spine disability was not shown in service and the most probative evidence fails to link any current lumbar spine disability to service.


CONCLUSION OF LAW

The criteria for establishing service connection for a low back disability have not been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1154, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014)) redefined VA's duty to assist a claimant in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2014).

The notice requirements of the VCAA require VA to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2014). In this case, compliant notice was provided in a June 2010 pre-adjudication letter. This case was last adjudicated in a December 2014 Supplemental Statement of the Case.

The record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. Specifically, the information and evidence that have been associated with the claims file include the Veteran's service treatment records (STRs), service personnel records, post-service treatment records, and statements of the Veteran. The Veteran was also afforded VA examinations or medical opinions in October 2013 and August 2014. Further, for the reasons discussed below regarding credibility, the Board finds that a new examination is not warranted. The Board finds that VA's duty to assist with respect to obtaining VA examinations and opinions regarding the issues decided herein has been met. 

The Board notes that it previously remanded the appeal in August 2013 and July 2014 for development to include association of outstanding service personnel records and ongoing treatment records, a VA examination, and addendum opinion. In response, the Agency of Original Jurisdiction (AOJ) obtained additional service personnel records, associated ongoing treatment records, provided a VA examination in October 2013 and obtained an addendum opinion in August 2014. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 

Based on a review of record, the Board finds that there is no indication that any additional evidence relevant to the issues to be decided herein is available and not part of the claims file. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). Therefore, the Board finds that duty to notify and duty to assist have been satisfied and will proceed to the merits of the issues on appeal.

II. Analysis

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claims and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2013) (holding that only conditions listed as chronic diseases in § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Moreover, where a veteran served for at least 90 days during a period of war or after December 31, 1946, and arthritis manifests to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309(a).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999).

The Board also notes that in cases where a veteran asserts service connection for injuries or disease incurred or aggravated in combat, 38 U.S.C.A. § 1154(b) and its implementing regulation, 38 C.F.R. § 3.304(d), are applicable. This statute and regulation ease the evidentiary burden of a combat veteran by permitting the use, under certain circumstances, of lay evidence. If the veteran was engaged in combat with the enemy, VA shall accept as sufficient proof of service connection satisfactory lay or other evidence of service incurrence, if the lay or other evidence is consistent with the circumstances, conditions, or hardships of such service. 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(d). To establish service connection, however, there must be the evidence of a current disability and a causal relationship between the current disability and the combat injury. Id. (citing Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Here, the Veteran is seeking service connection for a low back disorder, claiming that his current lumbar spine disability was incurred during active duty when he was injured changing a tire on a light armored vehicle in Iraq. In his October 2011 substantive appeal, the Veteran reported that a tire was rolled off the top of vehicle and he hurt his back in process of keeping the tire from rolling downhill. During January 2012 VA treatment, he indicated that the injury occurred when "a big tire fell on me while I was changing it in Iraq." He has reported pain and/or muscle spasms since that injury.

The record evidences a current lumbar spine disability, as VA treatment records dated in March 2011 and June 2013 show diagnoses of chronic lumbar myofascial dysfunction and degenerative disc disease (DDD) with annular tearing at L4-L5 and L5-S1. Thus, the question is whether his current disability is related to service. 

Regarding in-service incurrence, the available service treatment records are silent for low back complaints or diagnosis, despite other complaints, and, in fact, show affirmative denials of back problems. In this regard, the Veteran specifically alleges that his low back injury occurred while he serving in Iraq, which according to personnel records would have occurred either between March 2003 and May 2003, or April 2004 and October 2004. The Board also acknowledges that the Veteran was awarded the Combat Action Ribbon during this period of service from February 2003 to May 2003, and thus, the provisions of 38 U.S.C.A. § 1154(b) apply. However, the Board finds to be more probative the Veteran's affirmative denial of back pain during his deployment (despite reporting various other symptoms) on his December 2003 post-deployment report, during which he also stated that his current health is "excellent," that his health stayed the same or got better, and that he was seen zero times in sick call during his deployment. During an October 2004 assessment for purposes of separation, in reporting significant medical history, to include changes since his last physical examination in May 2001, the Veteran again offered no low back complaints or injury (but did report that he wanted Lasik surgery) and indicated that there had been no change since May 2001. For reference purposes, during the prior May 2001 examination, the Veteran affirmatively denied recurrent back pain or any back injury. Then, in November 2004, the Veteran was seen for left knee complaints, for which he was put on light duty and allowed to perform his own physical training in the gym, but he did not report any back pain or back injury. Also that month he was referred for substance abuse counseling, and his pertinent history of physical problems was "none."

Also probative is a July 2006 certification by the Veteran that "I am in good physical and mental health. I am medically qualified to activate and participate in annual training." Then, subsequent to his final period of active duty from October 2006 to January 2007, during a March 2008 service-related period health assessment (PHA), the Veteran reported a pain level of "0" on a scale of 0 to 10, and did not otherwise report a low back injury or symptoms. He was further found to be fit for duty and cleared for Physical Fitness Testing. Interestingly, it was noted on the PHA that the Veteran had deployment-related conditions noted to be an IED blast to his right ear, and referrals were indicated for audiology and mental/behavioral health; there was no mention of a back injury or an orthopedic referral.

To the extent that the Veteran now alleges that he injured his low back in service while changing a tire in Iraq, and has experienced back symptoms since the alleged injury, his current reports are not credible as they are inconsistent with or contradicted by other evidence of record. For example, as noted, the available service treatment records are negative for reports of a back injury incurred in deployment in Iraq, or indeed, for any lower back complaints or abnormalities at all. Additionally, VA treatment records show that while the Veteran reported "low back pain" in November 2005 and November 2006, there is no indication that he related the pain to any injury in service, including to any tire changing incident in Iraq, or that it otherwise started during a period of active service. Furthermore, when the Veteran subsequently presented to VA in January 2006, for "eval lbp," it was noted that he had occasional left wrist pain but "no lbp." Consistent with the January 2006 note, the Veteran was seen at VA in March 2006 for left hand pain, but "otherwise [had] no complaints." Interestingly, when the Veteran was seen by VA in June 2006 for a skin condition, he specifically reported at that time that he had a birthmark that became irritated in Iraq one and a half years prior, and was irritated by his military gear.

The Veteran was seen by VA in March 2008 for chronic pain to the lower back; there is again no indication that the Veteran related the back pain to service, and examination at that time revealed a negative straight leg raise test and no tenderness. In September 2009, the Veteran was seen for further complaints of low back pain, at which time he reported pain for the past two weeks after moving heavy equipment and furniture, and a flare-up that weekend. At that time, there was normal range of motion but also lumbar spasms, especially the in the right lower lumbar area, and there was positive straight leg raise test bilaterally. Imaging at that time showed straightening of the usual lumbar lordosis, which may have been positional; otherwise, no significant abnormality was demonstrated on the lumbar radiographs. The Board finds it likely that, had the Veteran credibly experienced a low back injury in service or symptoms since service in Iraq, he would have reported such injury during his initial VA treatments concerning his low back, as he did with other conditions. 

Indeed, even in his May 2010 application for VA benefits, the Veteran did not report any specific injury in service, but simply wrote that all his disabilities for which he was claiming service connection "occurred while serving on active duty." It was not until January 2011, after he filed his claim for benefits for a low back disability, that the record shows he first reported to a VA provider the occurrence of the claimed injury to the low back in service. The Board also notes that the Veteran's reports as to the nature and date of the injury or back pain has varied, albeit not drastically. For instance, during VA treatment in January 2011 and April 2014, it was noted that the injury occurred or "pain began" in 2003 in Iraq, but in February 2013, it was noted that the back pain began in 2004 in Iraq. In January 2012, it was noted that the Veteran had low back pain for the past 5 years, which would place an onset around January 2007. Additionally, while in January 2012, he reported that "a big tire fell on him" while he was changing it in Iraq, in his October 2011 substantive appeal, he stated that he injured his back while trying to prevent a tire from rolling downhill. While the foregoing inconsistencies are seemingly minor, when they are viewed in conjunction with the record as a whole, they further support that the Veteran's statements lack credibility.

Other evidence of record also calls into question the Veteran's overall credibility, including personnel records showing that he was administered nonjudicial punishment in service after he made a false official statement to various superiors in February 2004. In a March 2004 written statement, the Veteran acknowledged "misleading the truth" in statements to his superiors. The Board also considers probative that the Veteran received general discharges for two of his three periods of active service, including one for misconduct in 1997.

In any event, the Board finds it likely that the Veteran would have reported a relevant medical history upon seeking initial treatment for the low back, to include reporting sustaining prior injury to his low back while changing a tire in service, or having experienced a history of chronic pain related to the low back, had such events actually occurred. This is particularly likely as the evidence shows he related other conditions directly to service in Iraq, and related back pain to other incidents including moving furniture and heavy equipment in 2009. See AZ v. Shinseki, 731 F.3d 1303 (Fed. Cir. 2013) (recognizing the widely held view that the absence of an entry in a record may be considered evidence that the fact did not occur if it appears that the fact would have been recorded if present).

Based on the foregoing, even consider the Veteran's combat service, the Board finds that the statements offered by the Veteran to establish in-service incurrence of a back injury are not credible in light of the contradictory evidence and inconsistent statements of the Veteran. See Caluza v. Brown, 7 Vet. App. 498, 511 (1995) (the credibility of a witness can be impeached by a showing of interest, bias, or inconsistent statements).

Furthermore, even if the Board were to concede in-service injury to the back, the preponderance of the probative medical evidence is against a nexus between service and the Veteran's current disability. In October 2013, a VA examiner found no link between the Veteran's low back disability and his claimed in-service injury based on an absence of documented complaints related to the lower back in the service treatment records. In an August 2014 addendum also declining to find a nexus between a low back disability and service, the VA examiner also noted an absence of complaints in the service treatment records and elaborated that, with respect to the Veteran's disc protrusions with annular tears, "it is very unlikely that this type of condition would not have caused significant pain and forced him to seek care," had it occurred in service. Those opinions were cumulatively based upon examination of the Veteran and a review of the record, and considered the Veteran's reported history of an injury in service. Moreover, the opinions are supported by rationale. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302 -04 (2008) (holding that it is the factually accurate, reasoning for the conclusion that contributes to the probative value of a medical opinion). There is no competent medical opinion to the contrary. 

The Board recognizes that the August 2014 VA examiner also noted that the Veteran's "claim of lumbar strain may be valid as a temporary condition." However, the examiner did not diagnose a lumbar strain nor does that statement provide a nexus between any temporary lumbar strain and any event in service. On the contrary, when read in context of the opinion as a whole, it appears that the examiner was stating that, if the Veteran's claim turned on a temporary condition such as a lumbar strain, it "may be valid" but given the nature of the Veteran's current disability, it is not. Regardless, as discussed above, the Board does not find the Veteran's report of an in-service back injury to be credible, and further points out that, in December 2010, a VA provider noted the Veteran's representative had requested a causal statement regarding a claimed lumbar strain, but that "[a]fter records review I am not able to make such a causal statement." Thus, the only competent and probative opinion evidence of record is against the Veteran's claim.
 
While the Veteran contends that his low back disability was caused by or related to service, to include his claimed tire changing injury therein, there is no indication that he has specialized training or medical expertise to render such opinions. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). In this regard, the diagnosis and etiology of musculoskeletal back disorders are matters not capable of lay observation, and require medical expertise to determine. Accordingly, his opinion as to the diagnosis or etiology of his low back disability is not competent medical evidence. The Board finds the opinions of the VA examiners to be significantly more probative than the Veteran's lay assertions. Moreover, whether the symptoms the Veteran reportedly experienced in service or following service are in any way related to his current low back disability is a matter that also requires medical expertise to determine. See Clyburn v. West, 12 Vet. App. 296, 301 (1999) ("Although the veteran is competent to testify to the pain he has experienced since his tour in the Persian Gulf, he is not competent to testify to the fact that what he experienced in service and since service is the same condition he is currently diagnosed with."). Thus, the Veteran's own opinions regarding the etiology of his current low back disability are not competent medical evidence.


Finally, notwithstanding the notations of low back pain documented in VA treatment records in November 2005 and March 2008, in relative proximity to the Veteran's respective November 2004 and January 2007 separations from periods of active duty, there was no objective evidence of arthritis at those times. On the contrary, range of motion was normal in September 2009 and imaging of the lumbar spine at that time revealed no abnormalities beyond straightening of the normal lumbar lordosis. The first objective evidence of DDD was in March 2011, over four years following separation from the Veteran's last period of active duty. Thus, service connection is not warranted on a presumptive basis. 38 C.F.R. §§ 3.307, 3.309(a).

In sum, the Board finds that the preponderance of the competent, credible, and probative evidence is against the claim and service connection for a low back disability must be denied. 

In reaching the above conclusion, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b) (West 2014); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).


ORDER

Service connection for a low back disability is denied.



____________________________________________
K. A. BANFIELD
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs